**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

       **Plaintiff,**                                                           **09-CR-349A(Sr)**

       v.

**ORVILLE RODRIGUEZ,**

       **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Orville Rodriguez, is charged, along with a number of co-defendants, with having violated 21 U.S.C. § 846 (Count 1) and a forfeiture count pursuant to 21 U.S.C. §§ 853(a)(1) and 853(a)(2) (Count 19). (Docket #1).

The defendant has filed an omnibus motion (Docket #217) wherein he seeks, among other things, "suppression of statements" that he made on October 26, 2009. The government has submitted a response to this motion and particular request of the defendant. (Docket #224).

An evidentiary hearing on the defendant's motion to suppress his statements of October 26, 2009 was held by this Court on April 1, 2010 and a transcript of those proceedings was filed on May 4, 2010. (Docket #235). Counsel for the defendant and the government were given thirty (30) days from the date of the filing of the transcript (Docket #235) to file a post hearing memorandum in support of their respective legal positions. Since neither party filed a post-hearing memorandum, this Court took the matter under advisement on June 5, 2010.

## **FACTS**[1]

On October 26, 2009, the defendant was on New York State ("NYS") Parole, having been convicted of robbery, and was required to report to the Parole Office as a "routine report to his parole officer to verify his residence; to verify whether or not he had any police contact or used any drugs or alcohol." This was a "mandatory report." (T. 17-18). At that time, NYS Parole Officer Kyle Milbrand was aware that a federal indictment (Docket #1) had been filed against the defendant. (T. 18). When the defendant reported to the Parole Office on October 26, 2009, Officer Milbrand advised him that they "were going to take him over to his residence to search and make sure that he was adhering to his conditions of parole, to his release conditions." (T. 19).

---

[1] The facts are taken from the transcript of the evidentiary hearing conducted by this Court on April 1, 2010 and filed on May 4, 2010. (Docket #235). References are to the transcript are designated by "T" followed by the appropriate page(s) number(s).

The defendant was transported by parole officers to his approved parole residence at 2 Sandra Drive in Cheektowaga, New York on October 26, 2009. Upon arrival there, they "encountered" the defendant's girlfriend and "advised her that [they] were there to conduct a parole search of the residence." (T. 20). While the defendant was seated in the living room of the residence, the parole officers conducted a search of the premises, whereupon "several sharp-edged weapons, some knives, some swords and some brass knuckles" were discovered in the defendant's bedroom and in a computer room. Also discovered and seized during this search were "a scale and a small white baggy containing some cocaine." (T. 21). As a result of this finding, Milbrand contacted S.A. Galle of the FBI who, along with other FBI agents, came to the scene at 2 Sandra Drive on October 26, 2009. (T. 21-22, 52).

When S.A. Galle arrived, Parole Officer Milbrand advised him of the search of the premises and the discovery of contraband. (T. 53). S.A. Galle then engaged in "conversation" with the defendant after identifying himself as an FBI Agent who "was assigned to the case regarding the 31 Gang." S.A. Galle advised the defendant that he had been indicted and that he wished to speak to the defendant about the 31 Gang because the defendant "had been indicted because of his alleged involvement with the case." (T. 53). The defendant "informed [him] that his case had been dismissed; that was a long time ago, and that he didn't have any knowledge of what the case specifics were." (T. 53). In order to make the defendant aware of the fact "that the case was not dismissed because of lack of evidence," S.A. Galle "spoke to him about his involvement in the case and individuals in the case and some specific

-3-

details with regard to the people that [S.A. Galle] was aware that [the defendant] knew." (T. 54). S.A. Galle further advised the defendant that "it was not something that was going away; that he was indicted and he would have to answer to that." (T. 54). At that point, the defendant "indicate[d] that he knew what [Galle] was talking about." (T. 54). S.A. Galle then informed him that there had been a long investigation and that "a lot of evidence had been recovered," that there were "telephone intercepts, seized evidence, and several people had already given witness statements, and many, many interviews." (T. 54-55).

The defendant "indicated" that "he knew what [Galle] was talking about" and that he knew the individuals mentioned. (T 56). S.A. Galle then advised the defendant that he had the option of speaking to them in private away from his residence and his girlfriend, or he did not have to speak to them and "he would be transported to the Erie County Holding Center" since they had "an arrest warrant" for his arrest. S.A. Galle "informed [the defendant] that if he was willing to provide information to the government, that [he] would pass the information that [the defendant] provided as well as the fact that he was cooperating along to the prosecutors, to make them aware of it, and to begin the forward process of, hopefully, establishing a plea agreement." (T. 55, 62). The defendant chose to speak to the agents. (T. 56, 82-83). Arrangements were then made with Parole Officer Milbrand to have the defendant brought back to the NYS Parole Office where the agents could interview him in private. (T. 57). The defendant was placed in custody and transported to the NYS Parole Office by Parole Officer Milbrand. (T. 58).

The defendant was taken to a private conference room in the NYS Parole Office in handcuffs in the company of Parole Officer Milbrand, S.A. Galle and another agent. (T. 47, 57-58). Thereupon, S.A. Galle advised the defendant of his rights by reading from an FBI FD-395 form which he described as a *Miranda* warning form. (T. 58-59, 89, 93, 94). After reading the warnings and rights contained on the form to the defendant, the defendant indicated that he understood his rights and signed the form. (Government Exhibit 1)[2]. (T. 58-59). He and Parole Officer Milbrand signed the form as witnesses to the defendant's execution of the form. (T. 60).

The defendant never indicated that "he didn't understand what [S.A. Galle]" had read to him when advising him of his rights and giving him the *Miranda* warning; nor did the defendant ever request that his attorney be contacted or that an attorney "be present before, during or after the interview." (T. 61-62, 97-98). S.A. Galle, in the company of Parole Officer Milbrand, then interviewed the defendant for approximately one hour and made notes of the interview as it was conducted. After the interrogation of the defendant was completed, S.A. Galle transformed his interview notes into a written FD-302 report. (*See* Government Exhibit 2). (T. 63). The defendant was transported to the Erie County Holding Center. While waiting to be processed at the Erie County Holding Center, the defendant borrowed Parole Officer Milbrand's cell phone and called a family member and told that person to "call the lawyer" and advise him that the defendant would be appearing in court the next day.

---

[2] Reference is to those exhibits received in evidence at the evidentiary hearing conducted on April 1, 2010.

This was the first time the defendant made any mention of a lawyer on October 26, 2009. (T. 65).

## DISCUSSION AND ANALYSIS

The defendant argues that since the law enforcement officers knew that the defendant "was in fact represented by [counsel] on this same matter[3] and on a related violation of parole matter stemming from the filing of the criminal complaint which formed the basis of the instant indictment, law enforcement engage[d] in improper, inappropriate and unlawful questioning of defendant." (Docket #217, p. 19, ¶ 62). However, prior to the start of the evidentiary hearing, this Court conducted a lengthy colloquy with defense counsel as to what the issue to be determined should be. Previously, defense counsel advised that he planned on being a witness and testifying about his representation of the defendant and the alleged failure on the part of law enforcement to contact him before any questioning of his client (the defendant) occurred. On April 1, 2010, counsel for the defendant advised this Court that he would not be testifying. As a result, this Court framed the issue to be decided as follows:

> THE COURT: This hearing is to determine whether the alleged statements of the Defendant were made after having been advised of his rights by way of Miranda warning.
>
> What I'm here to listen to is what the agents did on a given date, what occurred at that time they were with the Defendant, what it is that was said by the agents to the

---

[3] Originally the defendant had been charged in a criminal complaint which was subsequently dismissed without prejudice on September 10, 2009 pursuant to Rule 48(b) Fed. R. Crim. P. (09-M-41) (Docket #36).

-6-

> Defendant, what if anything the Defendant said in response
> to what the agent said, and then make a determination
> whether there was compliance with the Miranda decision.
>
> That is: Advising the Defendant of his right to remain silent;
> his right to have counsel; if he cannot afford to have
> counsel, the Court will assign a counsel; and his right to
> have counsel present at all stages of any interview that
> might be carried out. That's the issue.

* * *

T. 10, 16.

The testimony elicited at the suppression hearing clearly establishes that the defendant never told any of the parole officers or agents that he wanted an attorney or that "he didn't want to speak to anybody." (T. 43, 50). For *Miranda* purposes, the right to have counsel present attaches only upon a suspect's clear request that he wants a lawyer. *Davis v. United States*, 572 U.S. 452, 458-459 (1994); *Diaz v. Senkowski*, 76 F.3d 61, 63 (2d Cir. 1996). Since no request had been made by the defendant, it was not necessary for this Court to address the issue of attorney representation as part of the evidentiary hearing. However, it is axiomatic that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The United States Supreme Court has expressly stated that:

> Miranda requires procedures that will warn a suspect in
> custody of his right to remain silent and which will assure the
> suspect that the exercise of that right will be honored.

*United States v. Dickerson*, 530 U.S. 428, 442 (2000).

Admittedly, S.A. Galle engaged in pre-*Miranda* warning "conversation" with the defendant after identifying himself as an FBI agent who "was assigned to the case regarding the 31 Gang" and telling the defendant that he "had been indicted because of his alleged involvement with the case." (T. 53). In response to the defendant's retort that "his case had been dismissed; that [it] was a long time ago and that he [the defendant] didn't have any knowledge of what the case specifics were" (T. 53), S.A. Galle, in order to make the defendant aware of the fact "that the case [against him] was not dismissed because of lack of evidence," spoke to the defendant "about his involvement in the case and individuals in the case and some specific details with regard to the people that [Galle] was aware that [the defendant] knew." (T. 54). S.A. Galle further advised the defendant that "it was not something that was going away; that he [the defendant] was indicted and he would have to answer to that." (T. 54). S.A. Galle also advised the defendant that there had been a long investigation and that "a lot of evidence had been recovered;" that there were "telephone intercepts, seized evidence, and several people had already given witness statements, and many, many interviews." (T. 54-55). Thereupon, the defendant "indicated" to S.A. Galle that he knew what [Galle] was talking about" and that he knew the individuals mentioned. (T. 54, 56). S.A. Galle then advised the defendant that the defendant had the option of speaking to them in private away from his residence and his girlfriend or refusing to speak to them whereupon "he would be transported to the Erie County Holding Center" since they had "an arrest warrant" for his arrest. S.A. Galle further "informed [the

defendant] that if he was willing to provide information to the government, that [he] would pass the information that [the defendant] provided as well as the fact that he was cooperating along to the prosecutors, to make them aware of it, and to begin the forward process of, hopefully, establishing a plea agreement." (T. 55, 62).

Notwithstanding the fact that the defendant elected to speak to the agents (T. 56, 82-83), the above described "conversation" between S.A. Galle and the defendant amounted to an interrogation of the defendant by S.A. Galle with the sole purpose of eliciting information from the defendant that would be incriminating. Based on the fact that contraband had been discovered in the house search by the parole officers and S.A. Galle's statement that the defendant had been indicted and that they had a warrant for his arrest, it is indisputable that the defendant was in custody during this "conversation" period. "A suspect is entitled to *Miranda* warnings only if he or she is interrogated while 'in custody.' *See, e.g.,* Thompson v. Keohane*,* 516 U.S. 99, 100-01, 116 S.Ct. 457, 460, 133 L.Ed.2d 383 (1995)." *Tankleff v. Senkowski*, 135 F.3d 235, 242-243 (2d Cir. 1998).

The holding of the Court of Appeals for the Second Circuit clearly establishes that the defendant was entitled to be advised of his rights in accordance with *Miranda* prior to S.A. Galle's unsolicited "conversing" with him as described above wherein the court stated:

> The next self-incrimination issue is whether the agents' statements to Montana during the drive from DEA

> headquarters to the courthouse constituted interrogation. The agents told Montana that cooperation would inure to his benefit. The police interrogate "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). Interrogation includes both express questioning as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. At 301, 100 S.Ct. At 1689-90. Agent Koval's unsolicited statement informing the defendants that any cooperation would be brought to the attention of the United States Attorney constituted "interrogation." *See United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir. 1986) (officer's statement suggesting that cooperation would be beneficial constituted interrogation). In fact, Agent O'Brien acknowledged that statements of this type are used by law enforcement officials to induce a suspect to provide incriminating evidence.
>
> This interrogation violated Montana's right to cut off questioning in violation of *Michigan v. Mosley*, 423 U.S. 96, 103-104, 96 S.Ct. 321, 326-27, 46 L.Ed.2d 313 (1975). *See also Miranda*, 384 U.S. at 479, 86 S.Ct. At 1630; *Campaneria v. Reid*, 891 F.2d 1014, 1021 (2d Cir. 1989), *cert. denied*, ___ U.S. ___, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991).

*United States v. Montana*, 958 F.2d 516, 518-519 (2d Cir. 1992).

> In *Miranda v. Arizona, supra*, the court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "**custodial interrogation**" without a prior warning. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody. . . ."

*Illinois v. Perkins*, 496 U.S. 292, 296 (1990) (citations omitted).

As a result, the failure of S.A. Galle to give *Miranda* warnings to the defendant when "conversing" with him at his residence causes the defendant's statements that "he knew what [Galle] was talking about" and that he knew the individuals mentioned (T. 56) to be inadmissible at trial. It is axiomatic that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

However, the statements allegedly made by the defendant while interrogated at the New York State Parole Office, for the reasons hereinafter stated, are admissible.

Once the defendant agreed to speak to the agents, he was transported to the New York State Parole Office by Parole Officer Milbrand. (T. 58). S.A. Galle drove to that office in his own vehicle. No interrogation of the defendant took place during the transporting of him to the parole office.

Upon arrival at the parole office, the defendant was taken to a private conference room and advised of his rights by S.A. Galle in the presence of Parole Officer Milbrand. This was done by S.A. Galle's reading of those rights from an FBI FD-395 form entitled "Advice of Rights." (*See* Government Exhibit 1) (T. 58-59). Thereafter, the defendant acknowledged that he understood his rights and signed the

"Advice of Rights" form (Government Exhibit 1) and agreed to answer questions. The defendant did not request an attorney or request that an attorney be present during this interview. (T. 61).

The interrogation of the defendant lasted approximately an hour, and the defendant made a number of statements as reflected in Government Exhibit 2, an FD-302 report generated by S.A. Galle which the defendant now seeks to suppress as evidence to be used at his trial.

The fact that this Court has found that the prior statements made by the defendant in his pre-*Miranda* "conversation" with S.A. Galle to be inadmissible does not automatically cause his post-*Miranda* statements to be "tainted" and therefore inadmissible by reason of the earlier deprivation of his rights under *Miranda*. This issue has been specifically addressed by the United States Supreme Court in *Oregan v. Elstad*, 470 U.S. 298 (1985) wherein the Court expressly stated:

> When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief. The Court has carefully adhered to this principle, permitting a narrow exception only where pressing public safety concerns demanded. See New York v. Quarles, 467 US, at 655-656, 81 L Ed 2d 550, 104 S Ct 2626. The Court today in no way retreats from the bright-line rule of Miranda. We do not imply that good faith excuses a failure to administer Miranda warnings; nor do we condone inherently coercive police tactics or methods offensive to due process that render the initial admission involuntary and undermine the suspect's will to invoke his rights once they are read to him. A handful of courts have, however, applied our

> precedents relating to confessions obtained under coercive circumstances to situations involving wholly voluntary admissions, requiring a passage of time or break in events before a second, fully warned statement can be deemed voluntary. Far from establishing a rigid rule, we direct courts to avoid one; there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of Miranda, was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of Miranda and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver. We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings.

*Id*. At 317-318; *See also United States v. Carter*, 489 F.3d 528, 536-537 (2d Cir. 2007), *cert. denied by Bearam v. United States*, 128 S.Ct. 1066 (2008); *Tanner v. Vincent*, 541 F.2d 932 (2d Cir. 1976), *cert. denied* 429 U.S. 1065 (1977).

Therefore, the issues that must be decided are (1) whether the pre-*Miranda* statements of the defendant were coerced in violation of his Fifth Amendment right to remain silent so as to cause his post-*Miranda* statements to be "tainted" and therefore inadmissible; and (2) whether the defendant voluntarily waived his Fifth Amendment rights after receiving the *Miranda* warning and advice of rights while in

custody. In doing so, it is required that the Court "examine the surrounding circumstances and the entire course of police conduct with respect to the [defendant] in evaluating the voluntariness of his statements." *Oregon v. Elstad, supra* at 318.

In considering the totality of the circumstances as established in the evidentiary hearing conducted by this Court, I find that the pre-*Miranda* statements of the defendant that were made in "conversation" with S.A. Galle were not coerced. The conversation with S.A. Galle took place in the defendant's living room in the late afternoon of October 26, 2009 while the defendant's girlfriend and daughter were on the premises. (T. 20, 31, 34, 56). S.A. Galle immediately identified himself as an FBI agent who "was assigned to the case regarding the 31 gang." He further advised the defendant that he had been indicted and that he wished to speak to him about the 31 gang because the defendant "had been indicted because of his alleged involvement with the case." (T. 53). S.A. Galle was speaking truthfully to the defendant about the indictment and the defendant having been named therein. There was no evidence of fraud, deceit or trickery on the part of S.A. Galle in his "conversation" with the defendant. (T. 54). There was nothing coercive about S.A. Galle telling the defendant that a lengthy investigation had been conducted using "telephone intercepts, seized evidence" and "witness statements." (T. 54-55).

The defendant's statements in response to S.A. Galle that "his case had been dismissed" and that "he didn't have any knowledge of what the case specifics were" (T. 53) certainly do not constitute inculpatory statements; nor are they indicative

of any evidence of coercion having been applied when making them.  Admittedly, when S.A. Galle informed the defendant as to his alleged "involvement in the case and individuals in the case and some specific details with regard to the people that [Galle] was aware that the [defendant] knew" and that "it was not something that was going away; that he was indicted and he would have to answer to that" (T. 54), the defendant's admission or "indication" that "he knew what [Galle] was talking about" and that he knew the individuals mentioned (T. 56) could be deemed or considered inculpatory.  Nevertheless, nothing has been presented to cause this Court to conclude that the actions and statements of S.A. Galle in the environment that existed in the defendant's residence at this time amounted to coercive conduct thereby causing the defendant's statements to be coerced or involuntary for Fifth Amendment purposes.  The United States Supreme Court "has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness."  *Oregon v. Elstad, supra* at 316 (citations omitted).

I find, in considering all of the circumstances, that the statements allegedly made by the defendant to S.A. Galle while at his home on October 26, 2009 were voluntarily made and his Fifth Amendment rights were not violated.  As a result, the failure on the part of S.A. Galle to give *Miranda* warnings to the defendant prior to his making such statements, does not cause his subsequent statements made at the parole office after having been advised of his rights by S.A. Galle to be "tainted" or inadmissible.  The only issue then to be decided is whether the defendant voluntarily waived his rights under the Fifth Amendment after having been advised of his rights.

S.A. Galle testified that upon arrival at the parole office the defendant was immediately advised of his rights by Galle by Galle reading those rights to him from a pre-printed FBI-395 form (Government Exhibit 1). After reading these rights to the defendant, S.A. Galle gave the same FBI-395 form to the defendant for his review. After the defendant read the "Advice of Rights" form (Government Exhibit 1), he voluntarily signed it since no evidence was presented at the hearing by the defendant to indicate otherwise. (T. 58-60, 61-62) (Government Exhibit 2). After the defendant signed the "Advice of Rights" form in the presence of S.A. Galle and Parole Officer Milbrand, Galle and Milbrand signed it as witnesses. By signing the "Advice of Rights" form, the defendant expressly acknowledged that he had "read this statement of [his] rights and [he] understood what [his] rights are." He further acknowledged in writing that he was "willing to answer questions without a lawyer present" at that time. (Government Exhibit 1).

It was only after the defendant had been advised of his rights by S.A. Galle and after the defendant signed the "Advice of Rights" form (Government Exhibit 1) that an interview and interrogation of the defendant began at the parole office.

Once again, considering all of the circumstances surrounding the events herein, with particular focus on the fact that the defendant chose to speak to the officers after being informed of his rights, I find that the defendant made a knowing and voluntary waiver of his rights under the Fifth Amendment after having been advised of his rights and warned in accordance with the requirements of *Miranda*.

## **CONCLUSION**

Although the defendant made responses to "unwarned yet uncoercive questioning" by S.A. Galle while at the defendant's residence, which this Court finds to be inadmissible at the trial of the defendant, that questioning did not cause the defendant to be "disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." *Oregon v. Elstad, supra* at 318. Therefore, it is hereby RECOMMENDED that defendant's motion to suppress his statements be GRANTED in part and DENIED in part in accordance with the aforesaid findings of this Court.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to

the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:	Buffalo, New York
	July 30, 2010

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**
